HENRY GILLUM, FOR USE OF RICHARD LLOYD, v. J. W. COLLIER
AND MOSES RICHARDSON.

*(Case No. 916.)*

1. HOMESTEAD — EQUITY.— Where land claimed as a homestead is charged with equities and incumbrances antedating the purchase, the husband, acting in good faith, has the right to adjust such equities and incumbrances by substituting for them a new lien on the land.

2. HOMESTEAD — LIEN.— If the husband seeks to avoid such new lien on the ground that the homestead, at the time the new lien was given, was in fact free from all previous equities and incumbrances, he should establish his equitable defense with reasonable certainty. If limitation against the old incumbrance at the time the new lien was given be relied on,

evidence should be produced negativing the existence of any fact that could have kept the former incumbrance alive.

3. EQUITY — LIEN.— Where one conveys a portion of a tract of land, on the whole of which there is a former incumbrance, and afterwards adjusts the incumbrance by substituting therefor a new lien on the entire tract, his vendee not being a party thereto, satisfaction of the new lien can only be enforced as against the vendor.

APPEAL from Smith.  Tried below before the Hon. John C. Robertson.

Suit December 16, 1878, by Henry Gillum, for the use of Richard Lloyd, on two promissory notes dated November 1, 1875, given by him in partitioning the Jose Maria league and labor of land between himself, Richard Lloyd, Henry Gillum and others named in the agreement of partition, and to foreclose the vendor's lien arising out of and created by the agreement of partition on the portion of land partitioned in said agreement to J. W. Collier, against the said Collier, as the party originating said lien, and against the said Moses Richardson, as a person living on a portion of the land conveyed to him by the said Collier in a deed describing it by metes and bounds previous to the said contract of partition, alleging that the said Richardson had notice of the agreement of partition before he paid the purchase money to Collier, and before Collier had made a conveyance of it to him.

On the 12th of March, 1879, J. W. Collier answered to the merits, and in his answer stated that previous to his agreement of partition with plaintiff and others, that the land partitioned to him in said agreement was his homestead, and that plaintiff had induced him to enter into the contract with him by falsely and fraudulently representing that W. W. White, on the 2d of May, 1866, had given to plaintiff's use a mortgage upon the land prior to the purchase of defendant from White, and that the same was a valid and subsisting mortgage at the time of the contract between plaintiff and defendant, to wit, on the 1st day of November, 1875, when, in fact, the mortgage was barred by the statute of limitations, and was not of force; and

38

alleging further, that defendant had no notice of the mortgage at the time of his purchase from White; that although the mortgage was recorded in the office of the county clerk of Smith county, the clerk had failed to index it as required by law, and that defendant knew nothing of its existence; and further, that plaintiff represented to defendant that the mortgage was on the whole of the land, whereas, in fact, it was only on one undivided third interest in the land.

The defendant Richardson also answered, denying the allegations in plaintiff's petition, and adopting his co-defendant's answer so far as applicable to his defense, alleging that he purchased of his co-defendant, Collier, one hundred acres of land, a part of the Procella league mentioned in plaintiff's petition, for $450, took a deed therefor, paid the purchase money, and had his deed duly recorded long before the institution of this suit; that his co-defendant, J. W. Collier, on the 27th of December, 1870, purchased the one hundred acres (sold and conveyed to defendant by the said Collier and wife afterwards); that he had no notice of the mortgage from W. W. White to Richard Lloyd, and that at the time of the contract between his co-defendant and plaintiff the mortgage was barred by the statute of limitations, and was not of force.

On the 3d of April, 1879, plaintiff filed a first supplemental petition in response to the answers of the defendant, in which he states the facts, claiming that at the time of the contract between plaintiff and defendant Collier, that plaintiff had a valid and subsisting mortgage given by W. W. White to plaintiff's use (Richard Lloyd), upon the undivided one-third interest of W. W. White in the Procella league of land, and that this mortgage had been duly recorded, both in Smith and Cherokee counties, a part of the land being situated in each one of these counties; that defendants had notice of this mortgage at the time of the alleged purchase of Collier from W. W. White, at the time of Richardson's purchase from Collier, and at the time of the contract between plaintiff and defendant Collier; that at the time of the purchase by Collier from

White and by Richardson from Collier, and until the contract between plaintiff and defendant Collier, the parties who owned the Procella league were tenants in common, whose interests were undefined and unascertained; and that by the contract between plaintiff and defendant Collier, and the other tenants, the respective interests of the tenants in common were, for the first time, defined and designated; that in the partition and division among them, defendant Collier, in order to get the land that he lived on, a part of which he had sold to Richardson, and to make up the difference in value between said land and that partitioned to plaintiff, gave to plaintiff the notes sued on and a lien upon the land, as well as that which he had sold to Richardson as that which he still retained.

On the 17th of April, 1879, defendant J. W. Collier filed a first supplemental answer, in which he answered that the land was his homestead at the time of the contract between plaintiff and defendant.

On the 17th of April, 1879, Moses Richardson filed an exception and answer to plaintiff's first supplemental petition, in which it is stated that the supplemental petition does not show that by the contract between his co-defendant, Collier, and plaintiff, a lien was created upon the land; but that if it does, it cannot affect defendant, because no vendor's lien, in fact, ever existed against the land, and he was a prior purchaser from Collier, and the contract between plaintiff and defendant Collier was without his knowledge and consent, and did not create any lien on the land purchased by him from Collier.

The plaintiff read in evidence the original mortgage from W. W. White to Richard Lloyd, made part of his supplemental petition, dated the 2d day of May, 1866. This instrument was duly acknowledged on the 2d day of May, 1866, by W. W. White and Richard Lloyd, and filed for record in the county clerk's office of Smith county, Texas, February 19, 1867, and recorded in book of deeds, according to the certificate of the clerk, and filed for record in the county clerk's office of Cherokee county,

Texas, on the 11th day of March, 1867, in book of deeds for that county. The deed from Collier to Moses Richardson, conveying one hundred acres by metes and bounds, was executed on the 20th of September, 1871.

The agreement between Lloyd and Gillum, of the one part, and J. W. Collier and a number of other parties, of the other part, dated November 2, 1875, recites the mortgage executed by White on the 2d of May, 1866, the fact that the debt it was given to secure was unpaid, and that Collier and the others bought with notice of that fact, that Collier claims 193 acres of the land. It recites the execution of two notes sued on, executed by Collier November 1, 1875, and declares a lien on the land for their payment.

Judgment was rendered in favor of plaintiff against J. W. Collier for the amount of the notes sued on and interest and costs of suit as between plaintiff and Collier; that plaintiff take nothing as to his alleged lien against Collier, as to which Collier go hence without day; that plaintiff take nothing as to the defendant Moses Richardson, and that he recover of plaintiff all costs incurred by him.

*Tignal W. Jones* for appellant.

I. The mortgage executed by W. W. White to Richard Lloyd, on the 2d day of May, 1866, on his undivided one-third interest in the Jose Maria Procella league and labor of land, is shown by the allegation in the petition; that the notes for the security of which it was executed were, in January, 1874, presented to and accepted by the administrator of W. W. White (he having died and administration having been opened on his estate in Smith county, Texas, in 1873), and approved by the clerk of the district court of Smith county, by which they became judgments. At the date of the mortgage, 2d day of May, 1866, the statute of limitations was in a state of suspension, and continued so to the 30th of March, 1870. Constitution of the State of Texas, art. 12, sec. 43; Andrus *v.* Randon, 34 Tex., 536. Where a debt is not barred,

the mortgage given to secure it is not barred.    Perkins *v.* Sterne, 22 Tex., 561.

II.  The mortgage given by W. W. White to Richard Lloyd, though the statutory period may have run at the date of the agreement of partition, to wit, the 2d of November, 1875, because it had run as to the notes secured by it, it was still a valid and subsisting lien on the land, and could only have been defeated by W. W. White, or the administrator of his estate, pleading it, the right to avail one's self of the bar of the statute being a personal privilege, and being considered as waived unless pleaded.    Pasch. Dig., art. 4629; R. S., art. 3220; Angell on Lim., secs. 285, 286.    Under the issues presented by the pleadings and the law applicable to the case, the evidence clearly shows that, by the contract of partition between Richard Lloyd, Henry Gillum, defendant J. W. Collier, and the other persons named in the agreement of partition (which was entered into on the 2d of November, 1875), the plaintiff had a lien, whether the vendor's lien or lien by contract is immaterial, on the land partitioned to J. W. Collier, unless the said Collier was induced to enter into said contract by the fraudulent representations of Henry Gillum as to the fact that the mortgage from W. W. White to Richard Lloyd on the undivided third interest of W. W. White in the Jose Maria Procella league and labor of land was, at the time of the contract of partition, a valid and subsisting lien; or unless the portion of said land claimed by J. W. Collier under his purchase and conveyance from W. W. White was, at the time of said contract of partition, his homestead, unincumbered; or unless the conveyance of a part of the undivided interest of said Collier in said land to Moses Richardson, by metes and bounds, prior to said agreement of partition, made it impossible for the said Collier, without the co-operation of said Richardson and his wife (the said Richardson claiming it as his homestead), to incumber it with a lien in making partition of the land held by the tenants in common.    Tenants in common may make partition among themselves by agreement in writing.    Hoxie *v.* Clay, 20 Tex.,

582; Stewart *v.* Baker, 17 Tex., 417; 1 Washburn on Real Property, 685.

*W. S. Herendon* and *C. G. White* for appellees.

I. The pleadings show that suit was not brought cn the mortgage of 1866, but on the agreement entered into by Collier on November 2, 1875, when defendant Richardson had purchased and had already been in possession of the land for four years after he had made his purchase. Defendants believe it is only necessary to call the attention of the court to this, without producing authorities on the proposition that Richardson cannot be made liable.

II. The consideration moving defendant Collier and others to enter into the agreement of November 2, 1875, was to satisfy whatever claim plaintiff might have by reason of the mortgage of May, 1866, which plaintiff represented to be valid at said date (November 2, 1875), and it was all the claim plaintiff had on said land. Plaintiff's cause of action was founded solely on the writings drawn up on said date, and if any lien existed it was by virtue of said agreement, and could not exist by operation of law. A vendor's lien exists only by operation of law. See Wynn *v.* Flanagan, 25 Tex., 781; Brown *v.* Christie, 35 Tex., 690; 1 Jones on Mortgages, secs. 207, 225. In order to establish a vendor's lien, there must be proof that the debt was incurred *for the purchase money* of the identical land on which the lien is sought to be enforced: Harris *v.* Crittenden, 25 Tex., 327. A recital in the note that the same is for purchase money may be controverted. Swain *v.* Cato, 34 Tex., 398; Davenport *v.* Chilton, 25 Tex., 519; Wynn *v.* Flanagan, id., 778. The creditor by taking any other lien waives the vendor's lien, and must rely solely on the last lien taken. Wasson *v.* Davis, 34 Tex., 167; McDonough *v.* Cross, 40 Tex., 251.

III. The defendant Collier could not thus incumber his homestead without the consent of his wife, and therefore the pretended lien was invalid and was so held by the court. The

defendants contend that if any error was made it was in favor of the plaintiff, because judgment should have been rendered absolutely for defendants, as there was no consideration for the promise of Collier on November 2, 1785, and the promise was a *nudum pactum.*

GOULD, ASSOCIATE JUSTICE.— The evidence was insufficient to establish that the instruments sued on were procured by fraud, and must have been so held by the court in giving judgment against Collier on the notes. The court, however, refused to enforce the lien claimed by plaintiffs, and evidently that refusal as to the land held by Collier was based on his claim that the land, at the time he executed the notes and contract sued on, was the homestead of himself, wife and family; the conclusion being, that it was at that time beyond Collier's power to incumber the place. Now, if the homestead right attached to land "charged with preceding equities and incumbrances," the husband, acting in good faith, had the right to adjust those equities and incumbrances, and in their adjustment to substitute for them a new lien. Clements *v.* Lacy, 51 Tex., 160, and cases there cited. Where, therefore, the husband seeks to avoid such new lien, as having been given on a homestead which was in fact free from all previous equities or incumbrances, and which he could not incumber, he should be required to establish his equitable defense with reasonable certainty. Having, as we have seen, failed in his defense that the notes and contract were procured by fraud, Collier occupied the position of denying his own authority to create the lien which he had attempted to give, and it devolved on him to establish affirmatively that the mortgage admitted in his contract to have been then existing was in truth barred by limitation, and that his title to his homestead was so far complete in equity as to make it immaterial whether the other joint owners of the league ratified it or not.

We think that merely showing the date of the notes and mortgage given by White, and the date of White's death, was

not enough. Some further evidence should have been adduced tending to negative the existence of any fact keeping the debt and mortgage alive. As it appeared that Collier's title to his homestead was derived from White, who was himself but a tenant in common with others, and that White's deed to him undertook to convey specific land by metes and bounds, it certainly did not appear, in the absence of evidence showing the circumstances fully, that equity would, in the partition of the land, allot him the part which he had improved. It does not appear that this could be done with due regard to the rights of others. The adjustment by which the other joint owners agreed to partition to him the part on which he had fixed his homestead, is not shown to have been unnecessary or unreasonable.

Our conclusion in this branch of the case is, that under the evidence the court should have given judgment enforcing the lien claimed against Collier on the land held by him at the date of the contract sued on, being the land deeded to him by White, less that deeded by him to Richardson.

Our opinion is that the judgment as to Richardson is correct. Collier could not, after conveying land to Richardson, create thereon a lien binding Richardson. Richardson's title was not a perfect legal title; but, such as it was, it was beyond Collier's power to incumber it.

The judgment as to appellee Richardson is affirmed, and the judgment as to Collier is reformed and rendered in this court in accordance with the opinion.

REFORMED AND RENDERED.

[Opinion delivered October 19, 1880.]